J-A27027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTINE V. SALES, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| STEPHEN R. SALES, SR., | : | |
| | : | |
| Appellant | : | No. 197 WDA 2014 |

Appeal from the Order Entered January 2, 2014
In the Court of Common Pleas of Allegheny County,
Civil Division, at No. FD-10-08504-016.

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED NOVEMBER 06, 2014**

Appellant, Stephen R. Sales, Sr. ("Husband"), appeals from the final Order of the trial court which divorced Husband and Appellee, Christine V. Sales ("Wife"), from the bonds of matrimony.  We affirm.

Initially, we note that Husband's brief is not compliant with the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. Issues are waived when they are not addressed in conformance with the rules.  *Moses Taylor Hospital v. White*, 799 A.2d 802, 804 (Pa. Super. 2002) (citing *Korn v. Epstein and DeSimone Reporting Group*, 727 A.2d 1130, 1135 (Pa .Super. 1999)); *Hrinkevich v. Hrinkevich*, 676 A.2d 237, 241 (1996).  As provided in Pa.R.A.P. 2101, appellate briefs "shall conform in all material respects with the requirements of these rules," and failure to

do so may result in the brief being quashed or dismissed. *Id*. We recognize that Husband is proceeding *pro se*. While this Court is willing to liberally construe materials filed by a *pro se* litigant, Husband is not entitled to any particular advantage because he lacks legal training. **Commonwealth v. Maris**, 629 A.2d 1014, 1017 n.1 (Pa. Super. 1993). Accordingly, a *pro se* litigant must comply with the procedural rules set forth in the Pennsylvania Rules of Court. **Id**.

In the instant case, the defects in Husband's brief are substantial; Husband's brief is rambling and often inexplicable. **See** Pa.R.A.P. 2119. It is difficult to evaluate whether Husband's attempt at the statement of questions presented comports with his rambling Pa.R.A.P. 1925(b) statement. The thirty-page brief, without consideration of the pages from unidentified transcripts, motions, and court orders he has inserted, has two pages of argument consisting of mere compilations of actions he "wants" regarding a particular issue. There is no identified argument, no explanation of an issue, and no citation to **applicable** law or reference to the record in his "argument." **See** Husband's Brief at 27–28.

While we are inclined to quash this appeal due to the numerous defects in Husband's brief, we have concluded that we are able to sufficiently discern some of the claims Husband seeks to raise. **See Commonwealth v. Lyons**, 833 A.2d 245 (Pa. Super. 2003) (holding that while *pro se* brief

was defective, this Court would address issues that could reasonably be discerned).

The trial court summarized the lengthy procedural history of this case in its Pa.R.A.P. 1925(a) opinion. We will not reproduce that sixteen-page history here, but note the following. The underlying suit began on September 24, 2010, when Wife filed a complaint in divorce against Husband. The parties have two children: Stephen, who has been emancipated throughout the case, and Jessica, who is sixteen years old. Both parties initially sought custody of Jessica, who was then twelve years old. The parties ultimately shared custody of Jessica on an alternating weekly basis. It appears that Husband has filed numerous frivolous motions and pleadings that have all been denied, thereby causing Wife to incur significant costs to defend. Indeed, Wife contends that Husband's "conduct became so egregious that on June 23, 2011 (in motion's court) [the trial judge] awarded Wife counsel fees in the amount of $500, specifically noting it was the first time he had awarded counsel fees since being on the Family Division bench." Wife's Brief at 5. The trial court indicated that Husband was *pro se* from September 24, 2010, until November 16, 2010. He was represented by counsel from November 16, 2010, until counsel withdrew on June 23, 2011. Husband was again *pro se* until new counsel entered his

appearance on October 10, 2012. That counsel withdrew on February 6, 2013.

The trial court opinion lists, in chronological order, the various motions the parties brought and their dispositions. Husband *praeciped* for a conciliation on equitable distribution, alimony, and counsel fees on June 11, 2012. Wife sought special relief on July 18, 2012, alleging that Husband made "unauthorized charges on Wife's credit card and . . . withdrawals from Wife's bank accounts." Trial Court Opinion, 3/31/14, at 10. The trial court sanctioned Husband $500 for his actions. Following a failed conciliation on July 18, 2012, the trial court granted a one-day hearing before a Master that was eventually held on February 12, 2013.

Following the February 12, 2013 hearing, the Master issued a report and recommendation on March 19, 2013. In her report, the Master noted that Wife's yearly income was $141,762 in 2012, and Husband's income was $62,327 in 2012. Pursuant to a July 20, 2012 order, Wife paid Husband $1,779 in spousal and child support. Husband resided in the marital residence. The Master recommended a 60%-40% distribution of the marital estate in Husband's favor.[1] The Master also recommended that Husband pay Wife $2,000 toward Wife's counsel fees, stating, "It is clear that discovery difficulties and frivolous motions by husband have unnecessarily

---

[1] Husband did not make a claim for alimony.

increased wife's counsel fees . . . ." Master's Report, 3/19/13, at 8. Husband filed exceptions on April 5, 2013.

Husband did not file a brief in support of his exceptions. On June 26, 2013, the trial court ordered Husband to file his brief within thirty days. Eventually, oral argument was heard on October 1, 2013. On October 3, 2013, the trial court granted the exceptions in part, holding that Husband's PNC savings account containing $25.00 was non-marital property, and the court removed it from the marital estate. The trial court also held that Wife's PNC ISP account had a balance at date of separation of $133,918, not $127,622, and that Husband paid $10,828 toward marital debt, not $3,360. The trial court directed that Wife was to forgo $5,414 of the marital estate to compensate Husband for his payment of this debt, and it dismissed the remaining exceptions. The trial court determined that "Wife was to make an equalization payment of $5,401 to Husband, which included a deduction of $2,000 for the counsel fees owed from Husband to Wife." Trial Court Opinion, 3/19/13, at 14. Following more maneuverings, a divorce decree was issued on December 31, 2013, which was docketed on January 2, 2014. Husband filed a notice of appeal on January 30, 2014.[2] The trial court directed the filing of a concise statement on February 4, 2014, and Husband filed his purported statement on February 24, 2014.

---

[2] Husband filed a variety of prior notices of appeal that were quashed as interlocutory.

Husband raises the following issues in his statement of the questions involved:

Was the February 6, 2013 order an abuse of discretion[?]  Wife's attorney intentionally states the wrong date of the hearing, in notice to [H]usband.  Wife submits the requested documents at trial as her exhibits.  Husband never submitted any documents to [W]ife after February 6, 2013.

Does Judge Walko abuse his authority by suspending [H]usband[']s APL, without a petition and twenty day's notice as required by statue[?]  Judge Walko is not allowed to give [W]ife or [W]ife's attorney legal advice; he essentially is acting as [W]ife's legal counsel.

Does the Court abuse their discretion by using [W]ife's student loan as a marital debt, which was paid off with marital funds (Exception 7).  And saying [H]usband[']s student loans are a voluntary debt, and discounting [H]usband[']s loans.  Both student loans were used to pay adult son's tuition at Duquesne for the school year 2010-11.

Does the Court abuse its authority by notifying [W]ife's attorney of a time change of a motion and not notify [H]usband[?]  Husband believes since [W]ife didn't show up for the hearing he should've received a default judgment and [W]ife's motion should be vacated.

If [W]ife's motion of October 22, 2013 is not vacated, does the Court abuse its discretion by requiring [H]usband to supply [W]ife's attorney with mortgage information in violation of privacy laws[?]  Whether [H]usband gives [W]ife's attorney mortgage information or not, [W]ife and/or [W]ife['s] attorney wouldn't be able to obtain any information from the mortgage lender in any event.

Does court abuse its discretion by requiring [H]usband to refinance home before the minor child turns 18[?]

Does court abuse its discretion, by changing the time of [W]ife's motion hearing on July 18, 2012 from 2:00 pm to 9:30 am without advising [H]usband, but advising [W]ife's attorney[?]

Order of Court July 18, 2012 does court abuse its discretion by allowing [W]ife and [W]ife's attorney to present false testimony and require [H]usband to pay attorney fees[?]

Order of Court June 23, 2011, does [c]ourt abuse its discretion by allowing [W]ife's attorney to present false testimony and require [H]usband to pay attorney fees[?]

False testimony, false swearing, changing of times of court hearing without notice to [H]usband, and disposing of [H]usband[']s motions prior to a hearing. Husband believes these issues have unfairly burdened him and thinks collectively these issues warrant a new trial.

Husband's Brief at 2–3.

In reviewing equitable distribution orders, our standard of review is limited. We have stated:

It is well established that absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution. In addition, when reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate economic justice and we will find an abuse of discretion only if the trial court misapplied the laws or failed to follow proper legal procedures. Further, the finder of fact is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.

In addition,

We do not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall application of the 23 Pa.C.S.A. § 3502(a) factors for

-7-

consideration in awarding equitable distribution. If we fail to find an abuse of discretion, the order must stand.

*Lee v. Lee*, 978 A.2d 380, 383–384 (Pa. Super. 2009) (citing *Trembach v. Trembach*, 615 A.2d 33, 36 (1992), and *Anzalone v. Anzalone*, 835 A.2d 773, 780 (Pa. Super. 2003)).

As to Husband's issues regarding payment of counsel fees, we note the trial court imposed fees pursuant to 42 Pa.C.S. § 2503,[3] which provides as follows:

**§ 2503.  Right of participants to receive counsel fees**

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

\* \* \*

(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

We have stated:

Section 2503(7) is a statutory provision enabling a participant to receive reasonable counsel fees when another participant engages in dilatory, obdurate or vexatious conduct during the pendency of a matter. *In re Estate of Liscio*, 432 Pa.Super. 440, 638 A.2d 1019 (1994). . . . Moreover, "it is well-settled that this Court will not reverse the trial court on its decision to award counsel fees absent an abuse of discretion." *O'Connell v. O'Connell*, 409 Pa.Super. 25, 597 A.2d 643, 647 (1991) (citation omitted).

---

[3]  The trial court mistakenly identified the section number as 2503 (8) rather than (7), but it quoted the correct language.

***Bonds v. Bonds***, 689 A.2d 275, 279–280 (Pa. Super. 1997). ***See Kulp v.***

***Hrivnak***, 765 A.2d 796, 800 (Pa. Super. 2000) (trial court award of

attorneys' fees affirmed where lower court found the appellants' conduct

dilatory, obdurate, and vexatious). ***Cf. Busse v. Busse***, 921 A.2d 1248,

1258 (Pa. Super. 2007) (no abuse of discretion for award of counsel fees

where the husband prolonged the already extensive litigation, he was not

forthcoming with information the wife requested, and the wife incurred

counsel fees as a result of the husband's conduct).

Finally, regarding Husband's issues involving the award of alimony

*pendent lite*, we have stated:

> We review APL awards under an abuse of discretion standard.
> ***Haentjens v. Haentjens***, 860 A.2d 1056, 1062 (Pa. Super.
> 2004). APL is "an order for temporary support granted to a
> spouse during the pendency of a divorce or annulment
> proceeding." 23 Pa.C.S.A. § 3103. APL "is designed to help the
> dependent spouse maintain the standard of living enjoyed while
> living with the independent spouse." ***Litmans v. Litmans***, 449
> Pa. Super. 209, 673 A.2d 382, 389 (1996). Also, and perhaps
> more importantly, "APL is based on the need of one party to
> have equal financial resources to pursue a divorce proceeding
> when, in theory, the other party has major assets which are the
> financial sinews of domestic warfare." ***Id.*** at 388. APL is thus
> not dependent on the status of the party as being a spouse or
> being remarried but is based, rather, on the state of the
> litigation. ***DeMasi v. DeMasi***, 408 Pa. Super. 414, 597 A.2d
> 101, 104–105 (1991). . . . "APL focuses on the ability of the
> individual who receives the APL during the course of the
> litigation to defend her/himself, and the only issue is whether
> the amount is reasonable for the purpose, which turns on the
> economic resources available to the spouse." ***Haentjens***, at
> 1062; ***see also DeMasi***, at 105.

*Childress v. Bogosian*, 12 A.3d 448, 463 (Pa. Super. 2011).

In reference to the issues that can be gleaned from Husband's brief, we have completely reviewed the record, including the notes of testimony from the February 12, 2013 hearing, and considered the arguments of the parties in light of the applicable law. We conclude that the issues that are preserved for review and adequately explained in Husband's brief are aptly addressed in the trial court's thorough opinion filed on March 31, 2014. We affirm on the basis of the trial court's opinion and direct the parties to attach it in the event of further review.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2014

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

No: FD 10-008504-016

CHRISTINE V. SALES,

Superior Court No.: 197 WDA 2014

Plaintiff,

**OPINION**

v.

BY:

STEPHEN R. SALES, SR.,

Honorable Donald R. Walko, Jr.
706 City-County Building
414 Grant Street
Pittsburgh, PA 15219

Defendant.

Copies to:

Counsel for Plaintiff:

Gregory Suher, Esq.
4328 Old William Penn Highway
Suite 2J
Monroeville, PA 15146

Counsel for Defendant:

PRO SE
Stephen R. Sales, Sr.
120 Monticello Drive
Monroeville, PA 15146

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CHRISTINE V. SALES,

        Plaintiff,

    v.

STEPHEN R. SALES, SR.,

        Defendant.

FAMILY DIVISION

Docket No.: FD 10-008504-016

Superior Court No.: 197 WDA 2014

## OPINION

WALKO, J.                                          March 31, 2014

Defendant/Husband Stephen R. Sales, Sr. (hereinafter referred to as "Husband") appeals this Court's June 23, 2011 Order of Court, July 18, 2012 Order of Court, February 6, 2013 Order of Court, June 26, 2013 Order of Court,[1] October 3, 2013 Order of Court and October 22, 2013 Order of Court. For the reasons set forth in this Opinion, these Orders of Court should be affirmed.

## PROCEDURAL HISTORY

The parties were married on April 28, 1989 in Allegheny County. Two (2) children were born of the marriage: Stephen R. Sales, Jr. (who has been emancipated throughout these proceedings) and Jessica Ruth Sales (DOB: 7/21/98).

On September 24, 2010 Plaintiff/Wife Christine V. Sales (hereinafter referred to as "Wife") filed a Complaint in Divorce, in which she made a claim for equitable distribution. On October 8, 2010 Husband filed an Answer to Wife's Complaint in Divorce, in which he made

---

[1] Husband incorrectly states the date of this Order as June 21, 2013.

1

claims for child support, spousal support, alimony and counsel fees and expenses. On that same day Husband filed a Complaint for Primary Custody of Jessica. On October 13, 2010 Husband filed a Complaint in Support, and Wife filed a Counterclaim for Custody, in which she requested primary physical and legal custody of Jessica.

On October 13, 2010 several motions were presented by the parties to the Honorable Philip A. Ignelzi. Husband presented an Emergency Motion for Special Relief, in which he claimed that Wife took out a $15,500 loan from her ISP Account (which was marital property), and that Wife reversed several payments that were necessary for household, medical and childcare expenses. Judge Ignelzi disposed of this Motion by scheduling a November 23, 2010 conciliation on the issues presented by Husband (the first October 13, 2010 Order of Court).

Wife presented a Motion for Special Custody Relief, and Judge Ignelzi entered an Order that provided that Husband and Wife would share physical custody of Jessica on a one week on/one week off basis pending further Order of Court (the second October 13, 2010 Order of Court). This Order further provided that the parties would share legal custody of Jessica pending further Order of Court. Wife next presented a Motion for Special Relief, wherein she claimed that Husband had refused her access to the Honda CRV, which was marital property and the vehicle that she drove during the marriage. Judge Ignelzi thereafter entered the third October 13, 2010 Order of Court, which provided that Wife would have exclusive use and possession of the Honda CRV pending further Order of Court, and that Wife was to ensure that the vehicle was properly insured at all times.

Wife's last Motion was another Motion for Special Relief. Wife claimed in this Motion that Husband changed the locks on the marital residence located at 120 Monticello Drive, Monroeville, Pennsylvania, which precluded her from entering the residence and retrieving her

belongings for her move to a separate residence. Judge Ignelzi then entered the fourth October 13, 2010 Order of Court, which provided that Husband was to immediately provide Wife with a key to the marital residence, and that Husband was not to restrict Wife's access to the marital residence without Wife's consent or further Order of Court.

On November 10, 2010 Husband presented four (4) Motions to Judge Ignelzi. Husband presented a Motion for Special Relief, in which he requested exclusive possession of the marital residence. Judge Ignelzi granted this requested relief via the first November 10, 2010 Order of Court. Husband also presented a Motion for Marital Counseling, in which he requested that the parties attend at least three (3) counseling sessions by December 24, 2010. Judge Ignelzi granted this relief via the second November 10, 2010 Order of Court, and he further ordered that the parties were to equally split the cost of the marriage counseling.

Husband also presented a Motion for Special Custody Relief. Husband alleged that the location of Wife's new residence was in an unsafe area, and that Jessica was prone to child predators and other strangers while in Wife's custody. Husband requested that Jessica take the school bus to the marital residence every day during Wife's week of custody, and that Wife could then pick up Jessica from the marital residence. Husband further requested that Jessica be able to have daily telephone contact with both parties. In the third November 10, 2010 Order of Court, Judge Ignelzi denied Husband's requests without prejudice to present these issues at the November 23, 2010 conciliation.

Husband's last Motion was another Motion for Special Relief, in which he claimed that Wife may have closed three (3) PNC Bank accounts, and that Wife has left Husband without financial resources to obtain legal counsel. Husband also alleged that Wife refused to pay for the mortgage, utilities, insurance and taxes on the marital residence since mid-September 2010, as

well as expenses related to the parties' jointly owned rental property located at 7835 Mark Drive, Verona, Pennsylvania. In the last November 10, 2010 Order of Court, Judge Ignelzi again denied Husband relief without prejudice to present these issues at the November 23, 2010 conciliation.

Through this point in time, Husband represented himself pro se. On November 16, 2010, however, counsel for Husband entered their appearance in all matters.

Two (2) Orders of Court were entered at the November 23, 2010 conciliation. The first Order of Court provided that if either party should require childcare for a period exceeding two (2) hours, the other party was to have the right of first refusal to provide the childcare. The second Order of Court provided that both parties were enjoined from transferring, assigning, liquidating or otherwise changing any of the parties' interests in any and all accounts in which the other party has a marital interest without written consent of the other party or further Order of Court. The Order further provided that Wife was to provide Husband with documentation regarding the location of any funds transferred or any dissipation of the funds withdrawn from either party's bank accounts or retirement accounts since September 1, 2010, including Wife's PNC ISP Account and Wife's PNC Bank accounts within thirty (30) days of the date of the Order. Husband was also permitted to direct that PNC Bank freeze Wife's ISP Account or otherwise prevent Wife from withdrawing or otherwise dissipating the assets contained therein.

The Order further provided that Wife was to take steps to create a money market account within five (5) days of the date of the Order in the names of both parties for all monies received from the marital rental property, and that both parties were to pay any and all bills necessary for the reasonable maintenance of and mortgage on the property. Husband's request for reimbursement of marital bills and counsel fees was preserved for equitable distribution.

On December 17, 2010 Husband filed a renewed Complaint for Primary Custody of Jessica. On February 3, 2011 Wife presented to Judge Ignelzi two (2) Motions for Special Relief. In the first Motion Wife requested that she take Jessica as an exemption on her 2010 tax return, as the parties shared physical custody of Jessica on a 50/50 basis and Wife had a higher adjusted gross income. Wife, accordingly, was the party to take Jessica as exemption pursuant to the Internal Revenue Code. Judge Ignelzi thereafter entered the first February 3, 2011 Order of Court, which provided the relief requested by Wife.

In Wife's second Motion for Special Relief, she requested that she take half of the mortgage interest deduction on the marital residence on her 2010 tax return that accumulated through the end of September 2010, as she resided in the marital residence until this time. Judge Ignelzi then entered the second February 3, 2011 Order of Court, which permitted Wife to take half the mortgage interest deduction associated with the marital residence through September 30, 2010 on her 2010 tax return, as well as half the mortgage interest deduction and/or any other tax benefit associated with the marital rental property for 2010.

On March 22, 2011 Wife presented a Motion for Special Relief to Judge Ignelzi, wherein she asked for permission to take out $48,000 from her PNC ISP Account as an advance against equitable distribution for the purchase of her own residence in the Monroeville area. Judge Ignelzi granted this request via the March 22, 2011 Order of Court. The parties also entered into a Consent Order of Court on March 22, 2011, which provided that the parties were to file a joint tax return for the 2010 year, and that any refund as a result of the joint filing would be split equally between the parties.

On May 16, 2011 the parties entered into a Consent Order of Court. The Order provided that any real estate or automobiles purchased by either party from the date of the Order forward

5

with non-marital funds or assets would be non-marital property. The Order further provided that but for the amount Wife was permitted to withdraw from her PNC ISP Account pursuant to the March 22, 2011 Order of Court, in the event either party purchased real estate or automobiles with non-marital funds or assets that party was to provide proof to the other party that no marital funds or assets had been used for the purchase.

On June 13, 2011 Husband, acting pro se, presented to Judge Ignelzi a Motion for Special Relief, wherein he requested that the Court amend the October 13, 2010 Order of Court to provide Husband with one (1) additional day of custody so that he could take Jessica on vacation to Yellowstone National Park. Judge Ignelzi denied this request via the June 13, 2011 Order of Court.

On June 23, 2011 counsel for Husband withdrew their appearance, as Husband informed counsel that he no longer required their representation. On that same day Husband presented to Judge Ignelzi two (2) Motions for Special Relief. In Husband's first Motion he requested that Wife be ordered to take Jessica to a number of her medical appointments and that the parties utilize Our Family Wizard to communicate about appointment times. In the first June 23, 2011 Order of Court, Judge Ignelzi denied Husband's request concerning the medical appointments, yet granted his request for the implementation of the Our Family Wizard service.

In Husband's Second Motion for Special Relief, he requested that Wife pay the mortgage on the marital rental property beginning July 13, 2011 and continuing for a period of twelve (12) months, as well as pay the property's utility bills and maintain the grounds of the property. Husband also averred that Wife was in contempt of the November 23, 2010 Order of Court, as she refused to open the money market account for the benefit of the marital rental property pursuant to said Order. Husband alleged further contempt of the November 23, 2010 Order of

6

Court, as Wife had not provided Husband with PNC Bank account statements evidencing the location of funds transferred or withdrawn from the parties' joint bank accounts. Husband also stated that the parties owned three (3) lots in Pittsburgh, and that they owed approximately $6,000 to Jordan Tax Services in back taxes.

In his Proposed Order of Court Husband specifically requested the following relief: (1) that Wife pay the mortgage on the marital rental property to HFC in the amount of $486.22 per month, plus any late fees that accrued, for twelve (12) months beginning with the July 13, 2011 payment; (2) that Wife open an "AND" money market account for repairs on the marital rental property, and that she make an initial deposit of $1,000 into this account and thereafter deposit $100 per month into the account beginning July 21, 2011; (3) that Wife was to forward to Husband at her own expense copies of the "AND" account's monthly statements; (4) that Wife was to forward to Husband statements for a specific PNC Bank account from January 2010 through September 2010 within fifteen (15) days of the date of the Order; (5) that Wife was to pay the Traveler's Insurance, Duquesne Light, Equitable Gas and WPJWA bills on the marital rental property as they became due; (6) that Wife was to maintain the grounds of the marital rental property at her expense from July 1 to September 30 on a yearly basis, unless the property were rented; and (7) that Wife was to set up a tax payment plan with Jordan Tax Services to pay all delinquent taxes on the three (3) lots in Pittsburgh that the parties jointly owned.

Judge Ignelzi denied Husband's Proposed Order in its entirety via the second June 23, 2011 Order of Court, and he ordered that Husband pay counsel fees in the amount of $500 to Wife's counsel.

On August 8, 2011 Wife presented to Judge Ignelzi a Motion for Special Relief. Wife informed the Court that her mother passed away on July 20, 2011, and that there were no funds

available for funeral and burial expenses. Wife requested that she be able to take out a loan in the amount of $4,300 from her PNC ISP Account to cover these expenses. Judge Ignelzi granted Wife's request via the August 8, 2011 Order of Court.

On October 12, 2011 Wife filed a Petition to Modify Custody Order. In this Petition Wife requested a modification of the October 13, 2010 Order of Court, which provided the week on/week off custody schedule. Wife requested primary physical and sole legal custody of Jessica.

On November 9, 2011 Husband presented to Judge Ignelzi a Motion for Special Relief, wherein he requested that the Court allow him to title the Honda Pilot (a marital vehicle) into his name only and thereafter sell the vehicle. Husband further averred that the sale price less maintenance and costs of sale could count against his share of equitable distribution. Judge Ignelzi then entered the November 9, 2011 Order of Court, which granted Husband exclusive possession of the Honda Pilot and permitted him to take the necessary steps to title the vehicle solely in his name. The Order further provided that Husband could sell the Honda Pilot at the time of equitable distribution, and that Husband could present to the Court evidence of any repairs that he made to the car between September 24, 2010 and the date of sale, including costs of sale. The Court would then determine which repairs or costs would be offset against any sale proceeds, and any sale proceeds or net sale proceeds would be offset against Husband's share of equitable distribution.

Wife also presented a Motion for Special Relief to Judge Ignelzi on November 9, 2011 in relation to the parties' jointly filed tax return for 2010. Wife claimed that Husband did not provide her with her full portion of the tax refund awarded to both parties, due to Husband's underpayment to Wife as well as his decision to void a refund check in the amount of $1,075.88. In the November 9, 2011 Order of Court, therefore, Judge Ignelzi ordered Husband to

immediately contact the IRS and take whatever action necessary to receive the $1,075.88 still due to the parties as a result of Husband's voiding the refund check. The Order further provided that Husband was to pay to Wife a portion of her half of the parties' refund from the jointly filed 2010 tax return in the amount of $1,082.00 by December 4, 2011.

On December 7, 2011 this case was transferred from Judge Ignelzi to this Court via Administrative Order.

A custody conciliation was held before this Court on January 20, 2012 on Wife's Petition to Modify Custody Order. The parties could not reach an agreement at that conciliation, and the Court thereafter entered the January 20, 2012 Order of Court, which scheduled a half-day hearing for April 30, 2012 to dispose of Wife's Petition. The Court, however, entered an Order on February 29, 2012 *sua sponte* that cancelled the custody hearing scheduled for April 30, 2012, as Mother withdrew her Petition to Modify Custody Order.

On June 11, 2012 Husband praeciped for a conciliation on equitable distribution, alimony and counsel fees. Said conciliation was scheduled before this Court for July 18, 2012. After the July 18, 2012 conciliation, the Court entered an Order that scheduled a one (1) day hearing before a Master on all pending issues between the parties.

Wife also presented to the Court a Motion for Special Relief on July 18, 2012. In this Motion Wife recounted the June 23, 2011 Motions Court before Judge Ignelzi, at which time Judge Ignelzi entered the Order awarding Wife $500 in counsel fees due to Husband's vexatious behavior. Wife stated the following in the body of the July 18, 2012 Motion: "The Honorable Judge Philip Ignelzi directed husband pay counsel fees in the amount of $500.00. It should be noted that fees were awarded upon husband presenting one in a line of frivolous motions. Upon

9

ordering the fees, Judge Ignelzi told husband it was the first time he had awarded counsel fees since being on the Family Division bench but he felt it necessary due to husband's actions."

Wife further averred in this Motion that Husband engaged in fraudulent and unauthorized activity post-separation by opening credit cards in Wife's name, making unauthorized charges on Wife's credit card and making unauthorized withdrawals from Wife's bank accounts. Wife stated that these actions caused harm to her credit, caused her to incur significant counsel fees and caused her to spend a substantial amount of her time closing and reopening accounts.

The Court thereafter entered the July 18, 2012 Order of Court. This Order prohibited Husband from incurring any debt Wife may be responsible for or incurring debt in Wife's name. The Order further prohibited Husband from opening, accessing or charging any bank accounts in Wife's name. Husband was sanctioned $500 in counsel fees for his actions, and the Court preserved the issue of additional counsel fees and fraud for equitable distribution.

On August 13, 2012 an Administrative Order was issued that scheduled a one (1) day hearing before Master Miller for November 29, 2012. By Consent Order of Court dated October 15, 2012 that hearing was continued to February 11, 2013.

On October 10, 2012 Husband's new counsel entered their appearance in this case. On December 21, 2012 the parties entered into a Consent Order of Court regarding discovery. The Order provided that within ten (10) days, Wife was to provide Husband the following: (1) if in existence, any 2011 1099 Forms; (2) if in existence, PayPal statements from the date of separation forward; (3) if in existence, PNC stock statements for the past three (3) years; (4) proof of any ISP Account withdrawals from 2011 to 2012, excluding any withdrawals allowed by Order of Court; (5) February to March 2009 and December 2009 to February 2010 bank statements for PNC Account Number -6274, and May 1 through May 31, 2010 bank statement

for PNC Account Number -1674; (6) date of separation credit card statement for the Sears Account; (7) date of separation and current statement for CapitalOne Account Number -0173, -8441, and -0159; and (8) 2012 year end paystub. The Order further provided that within ten (10) days, Husband was to provide Wife the following: (1) a verified response to the outstanding discovery; and (2) a list of vehicles he has had an interest in over the past three (3) years with year, make and model. The Order preserved both parties' requests for counsel fees.

On January 18, 2013 Wife was scheduled to present to the Court a Motion to Compel Discovery, wherein Wife alleged that Husband had still not adequately responded to her discovery requests. Husband and Wife, however, entered into the January 18, 2013 Consent Order of Court before presentation of Wife's Motion. The Consent Order provided that within seven (7) days of the date of the Order, Husband was to provide Wife with the following: a verified statement of all vehicles Husband had an interest in over the past three (3) years with the year, make and model; PNC Savings Account -1297 statements in full for the years 2010, 2011 and 2012; complete Orchard Bank credit card Account Number -9937 statements, including the part of the statements showing whose name the account is titled under for August through December 2010; and the most recent or last statement, and any information concerning bank account ending in -9495 and statements for 2010 through 2012.

On February 6, 2013 counsel for Husband withdrew their appearance, as Husband requested termination of their services. That same day Wife presented to the Court an Emergency Motion to Compel. Wife informed the Court in her Motion that her counsel was informed by Husband's counsel on January 28, 2013 that they were no longer representing Husband, and that since becoming pro se again Husband had failed to provide any discovery documents to Wife pursuant to the January 18, 2013 Consent Order of Court. The Court

thereafter entered the February 6, 2013 Order of Court, which provided that Husband was to fully comply with the January 18, 2013 Consent Order of Court within twenty-four (24) hours. If Husband failed to do so or if Husband's response was so voluminous or disorganized that Wife was precluded from using the documentation or information at the February 12, 2013 Master's hearing, the Order provided that the record from said hearing would remain open for Wife to submit evidence concerning the discovery requested from Husband in the January 18, 2013 Consent Order of Court. The Order further held that if Husband did not fully comply with the Order, Wife could present an emergency Motion prior to the February 12, 2013 Master's hearing with a request for further sanctions or fees, which could have included Husband being precluded from presenting certain evidence at said hearing. The issue of counsel fees was preserved.

After the February 12, 2013 hearing, Master Miller issued a Report and Recommendation on March 19, 2013. Master Miller recommended a 60%-40% distribution of the marital estate in Husband's favor. As such, Master Miller found that Husband needed to receive assets in the amount of $324,642 and that Wife needed to receive assets in the amount of $216,434. The Master also recommended that Husband pay $2,000 toward Wife's counsel fees in full within sixty (60) days. Husband filed Exceptions to the Master's Report and Recommendation on April 5, 2013.

On June 26, 2013 Wife presented to the Court a Motion for Special Relief. Wife claimed in her Motion that Husband had not filed a Brief in Support of his Exceptions, nor had Husband ordered a transcript of the Master's hearing as required. Wife averred that she was severely prejudiced by Husband's Exceptions remaining outstanding, as the Master's Recommendation required Wife to continue paying *alimony pendent lite* ("APL") to Husband pending the entry of

a divorce decree, and a divorce decree could not be entered until Husband's Exceptions were disposed of by the Court.

The Court thereafter entered the June 26, 2013 Order of Court, which required Husband to file a Brief in Support of his Exceptions within thirty (30) days and to immediately order a transcript of the February 12, 2013 Master's hearing. The Docket Clerk was also ordered to schedule an oral argument date to dispose of Husband's Exceptions, and if Husband failed to order a transcript or file a Brief in Support of Exceptions, his Exceptions would be dismissed and the oral argument cancelled. The Order, lastly, suspended Wife's APL obligation to Husband.

On August 20, 2013 Wife again presented to the Court a Motion for Special Relief, wherein she claimed that Husband's submission to the Court on July 24, 2013 of a Brief in Support of Exceptions was anything but a "brief," and that Husband's order of a transcript on July 18, 2013 was not immediate. Wife requested that Husband's Exceptions be dismissed. The Court denied Wife's requested relief via the August 20, 2013 Order of Court.

Wife filed her Brief in Opposition to Husband's Exceptions on September 27, 2013, and Husband filed an Amendment to his Brief in Support of Exceptions on September 30, 2013. After oral argument on Husband's Exceptions took place on October 1, 2013, the Court entered its October 3, 2013 Order disposing of said Exceptions. The Court granted Husband's Exception #6 by holding that Husband's PNC savings account was non-marital property, and the Court removed the account's $25 value on September 16, 2010 from the marital estate. The Court also granted Husband's Exception #7 in part by holding that the marital value of Wife's PNC ISP account on the date of separation was $133,918. The Court further granted Husband's Exceptions #14 and #15 in part by holding that Husband had paid $10,828 toward marital debt and that Wife was to forgo $5,414 of the marital estate to compensate Husband for his payment

of this debt. The Court dismissed Husband's remaining Exceptions. The Court determined that Wife was to make an equalization payment of $5,401 to Husband, which included a deduction of $2,000 for the counsel fees owed from Husband to Wife.

On October 22, 2013 Husband presented to the Court a Motion for Special Relief, wherein he asked the Court to order Wife to bring the mortgage on the marital rental property current within seven (7) days and to require Wife to change ownership of the Honda CRV from Husband to Wife. The Court denied Husband's Motion via the first October 22, 2013 Order of Court.

Wife also presented to the Court a Motion for Special Relief/Clarification on October 22, 2013, wherein she requested the following: that Husband refinance the debt associated with the marital residence within ninety (90) days into Husband's name alone, as he was awarded the marital residence in equitable distribution; that Husband sign over title of the 2004 Honda CRV to Wife within seven (7) days; and that Husband take the action necessary to deed the marital rental property to Wife or a person, business or organization of Wife's choice upon demand. Wife also asked the Court to clarify the October 3, 2013 Order relating to marital debt and to vacate the November 23, 2010 Order of Court that prohibited the parties from changing their interests in any retirement or investment accounts titled in their respective names.

The Court thereafter entered the second October 22, 2013 Order of Court. The Order provided that Husband was to refinance all of the debt associated with the marital residence into his name alone and to remove Wife's name from said debt, that Husband was to sign title over to Wife of the 2004 Honda CRV, that Wife was to pay the $5,401 due to Husband by rollover from Wife's retirement/investment account into a retirement/investment account of Husband's choice within sixty (60) days, that vacated the November 23, 2010 Order of Court, and that held that

14

Husband was to execute a deed transferring title of the marital rental property to Wife or a person, business or organization of Wife's choice, as well as take any other steps necessary upon demand to transfer his title/interest in the marital rental property. Paragraph (3) of the October 3, 2013 Order of Court was clarified to provide that Husband paid a total of $10,828 toward marital debt, which included the $3,360 in marital debt paid by Husband as determined in Master Miller's Report and Recommendation.

On November 6, 2013 Wife filed her Affidavit Under §3301(d) of the Divorce Code. On November 14, 2013 Husband filed his Counter-Affidavit Under §3301(d) of the Divorce Code. On December 19, 2013 Wife praeciped to transmit the record pursuant to §3301(d) of the Divorce Code, and a Divorce Decree was entered on December 31, 2013.

Husband filed a timely Notice of Appeal on January 30, 2014. The Court issued an Order on February 3, 2014 that directed Husband to file a Concise Statement of Matters Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) ("Concise Statement") within twenty-one (21) days from the date of the Order's entry on the docket for the filing and service of the Concise Statement. This Order was entered on the docket on February 4, 2014, and Husband filed his Concise Statement on February 24, 2014.

## STANDARD OF REVIEW

Concerning an award of counsel fees, the Pennsylvania Superior Court has held that, "[t]he trial court has great latitude and discretion with respect to an award of [counsel] fees pursuant to a statute. In reviewing a trial court's award of [counsel] fees, our standard is abuse of discretion. If there is support in the record for the trial court's findings of fact that the conduct of the party was obdurate, vexatious or in bad faith, we will not disturb the trial court's decision."

15

*Holler v. Smith*, 928 A.2d 330, 332 (Pa. Super. 2007), quoting *Scalia v. Erie Insurance Exchange*, 878 A.2d 114, 116 (Pa. Super. 2005).

Concerning an APL award, the Pennsylvania Superior Court's standard of review is well-settled. *Dalessio v. Dalessio*, 805 A.2d 1250, 1252 (Pa. Super. 2002). If an order of APL is bolstered by competent evidence, the order will not be reversed absent an abuse of discretion by the trial court. *Id.*

Finally, the Pennsylvania Superior Court has stated its standard of review in equitable distribution matters as follows: "Our standard of review in assessing the propriety of a marital distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *Busse v. Busse*, 921 A.2d 1248, 1257 (Pa. Super. 2007), quoting *Smith v. Smith*, 904 A.2d 15, 18 (Pa. Super. 2006) and *McCoy v. McCoy*, 888 A.2d 906, 908 (Pa. Super. 2005).

## DISCUSSION

Husband raises the following issues on Appeal:[2]

> 1. The trial court erred in ordering Husband to pay counsel fees in the amount of $500 in the June 23, 2011 Order of Court.
>
> 2. The trial court erred in ordering Husband to pay counsel fees in the amount of $500 in the July 18, 2012 Order of Court.
>
> 3. The trial court erred in entering the February 6, 2013 Order of Court, as the conditions set forth in the Order were impossible to meet, Wife failed to properly and timely serve Husband the Motion that prefaced the Order and Wife misinformed Husband about the date that the Motion would be heard.
>
> 4. The trial court erred by suspending Wife's APL obligation to Husband in the June 26, 2013 Order of Court.

---

[2] In an effort to provide some clarity and fluidity to Husband's disjointed Notice of Appeal and Concise Statement of Matters Complained of on Appeal, the Court lists and addresses Husband's Matters Complained of on Appeal in chronological order.

5. The trial court erred in determining the total marital value of Wife's PNC ISP Account and in awarding $2,000 in counsel fees to Wife in the October 3, 2013 Order of Court. The trial court further erred in failing to address Husband's Notice of Claim for counsel fees and reimbursement of the court transcript.

6. The trial court erred in holding that Husband was to refinance all debt associated with the former marital residence into his name alone and to remove Wife's name from said debt in the October 22, 2013 Order of Court. The trial court further erred in that Order by clarifying Paragraph (3) of the October 3, 2013 Order of Court to hold that Husband has paid a total of $10,828 toward marital debt, which includes the $3,360 in marital debt paid by Husband as determined in Master Miller's Report and Recommendation.

**The Honorable Judge Ignelzi did not err in awarding Wife counsel fees in the June 23, 2011 Order of Court.**
*(Matter Complained of on Appeal #1)*

42 Pa.C.S.A. §2503 (Right of participant to receive counsel fees) provides that, "[t]he following participants [engaged in litigation] shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter: ... (8) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter." As discussed in the Procedural History section of this Opinion, Wife's counsel, an Officer of this Court, stated in Paragraph 4 of the July 18, 2012 Motion for Special Relief that, "[H]usband has filed numerous motions/pleadings solely to annoy [W]ife, harass [W]ife and rack up her counsel fees," and that "on June 23, 2011 The Honorable Judge Philip Ignelzi directed [H]usband pay counsel fees in the amount of $500," an amount which was awarded upon "[H]usband presenting one in a line of frivolous motions." Paragraph 4 goes on to state that, "Judge Ignelzi told [H]usband it was the first time he had awarded counsel fees since being on the Family Division bench but he felt it was necessary due to Husband's actions."

Since counsel fees were awarded to Wife in Motions Court, there is no record available of the oral argument for review. Upon the Court's study of the docket up through the time of

17

transfer of this case from Judge Ignelzi to this Court, however, it is clear that many of Husband's actions as a pro se litigant were taken with the intent to annoy Wife. The Court finds that the two (2) June 23, 2011 Motions were especially frivolous, as the relief Husband requested in his first Motion was a type of "preemptive strike" that would require Wife to take Jessica to future, yet to be scheduled doctor's appointments, and the relief Husband requested in his second Motion would place on Wife the brunt of the marital debt without good cause. Judge Ignelzi, therefore, properly conferred an award of counsel fees to Wife via the June 23, 2011 Order of Court.

**The Court did not err in awarding Wife counsel fees in the July 18, 2012 Order of Court.**
*(Matter Complained of on Appeal #2)*

In his Concise Statement Husband states that, "[Wife] and [Wife's] attorney misrepresent[ed] the facts [in the July 18, 2012 Motion] and suffered no harm." This Court finds otherwise. In the July 18, 2012 Motion presented to the Court Wife made several credible and damning allegations against Husband that warranted an award of counsel fees. Wife stated in the Motion that Husband consistently engaged in unauthorized or fraudulent activity, including the following: Husband opened an Orchard Bank credit card under Wife's name in July 2010, and the account was eventually closed and the balance waived upon Wife learning of the activity; Husband forged Wife's name on a dividend check received at the marital residence in November 2010 in the amount of $88.39; Husband made an unauthorized charge in the amount of $520.89 against Wife's PNC Bank Account in November 2010, which required Wife to file a Written Statement of Unauthorized Debit or Incorrect Debit with PNC Bank; Husband opened an account by fraud online utilizing Wife's name in October 2010, and he used this account until February 2011; Husband charged over $1,000 to a CapitalOne credit card in October 2010 that Husband opened by fraud in Wife's name, and the account had been placed with several collection agencies and caused harm to Wife's credit; and on June 3, 2012 Husband successfully

accessed Wife's post-separation bank account without Wife's permission and made over $1,000 in unauthorized debits. As of result of this last action, Wife was forced to close the account and open a new account. Attached to Wife's Motion were supporting documents that verified the above allegations.

The Court found Wife's allegations to be credible, and that Husband's conduct was not only vexatious, but reprehensible. The Court's determination that an award of counsel fees in the July 18, 2012 Order of Court was appropriate under these circumstances, as Wife was required to appear before the Court to stymie Husband's illicit activity.

**The Court did not err in hearing the February 6, 2013 Motion or entering the February 6, 2013 Order of Court.**
*(Matter Complained of on Appeal #3)*

In Husband's Concise Statement he argues that the Court erred in hearing Wife's Motion presented to the Court on February 6, 2013. Husband explains that he was provided one (1) day's notice of the Motion, and that Wife's counsel placed the Motion in his mailbox, as well as allegedly throwing another copy onto Husband's front yard. Husband also explains that Wife's counsel incorrectly stated in a letter attached to the Motion that it was to be heard on February 5, 2013 at 2:00PM.

First, Wife designated and the Court accepted her Motion as an *Emergency* Motion to Compel. Pursuant to Allegheny County Local Family Division Rule 130(a)(2), "[s]even days notice of presentation of any motion is required absent an emergency or consent by the opposing party to a shorter notice of presentation." Since the Court found Wife's February 6, 2013 Motion to be an emergency in nature,[3] the notice requirement to Husband was waived.

---

[3] The Motion stated that Husband had failed to adequately respond to several of Wife's discovery requests. Wife requested that Husband respond to the incomplete discovery in an immediate manner, as a Master's hearing on equitable distribution and other pending issues was scheduled to take place on February 12, 2013.

Second, the cover letter from Wife's counsel to Husband in relation to the Emergency Motion is on the docket in this case. The letter is dated February 5, 2013, and it states in relevant part: "Please find enclosed an Emergency Motion to Compel that will be presented to Judge Walko tomorrow, February 5, 2013 at 2:00PM..." Although the date discrepancy may have been initially confusing to Husband, the Motion itself was properly noticed with the correct date of presentation as February 6, 2013 at 2:00PM. This minor error is not a sufficient basis to grant Husband's requested relief on appeal related to the February 6, 2013 Order of Court.

Third, Husband's statement in his Notice of Appeal that the conditions set forth in the February 6, 2013 Order were impossible to meet is disingenuous. As made clear in Wife's February 6, 2013 Motion, two (2) Consent Orders of Court were entered, one on December 21, 2012 and one on January 18, 2013, that acknowledged the outstanding discovery due from Husband to Wife. By the time of the presentation of the February 6, 2013 Motion, Husband should have already had the discovery requested by Wife prepared and sent to her counsel on not one, but on two prior occasions. The Court, appropriately, found that Husband was capable of meeting and should have been compelled to meet the twenty-four (24) hour discovery deadline imposed in the February 6, 2013 Order, especially in light of the Master's hearing that was scheduled to take place six (6) days later.

**The Court did not err in suspending Wife's APL obligation to Husband in the June 26, 2013 Order of Court.**
*(Matter Complained of on Appeal #4)*

In his Concise Statement, Husband argues that the Court did not comply with Pa.R.C.P. Rule 1910.19 (Support. Modification. Termination. Guidelines as Substantial Change in Circumstances. Overpayments). Husband further argues that the Court erred because Wife never filed a Petition to Modify APL, and that the Allegheny County Solicitor's Office was not

20

notified that a Motion for Modification of Support was going to be heard, as Husband is a pro se litigant.

The Court first notes that Wife's APL obligation was not modified or terminated, but suspended. This renders Pa.R.C.P. Rule 1910.19 inapplicable to this case. The Court next notes that the Allegheny County Solicitor's Office is notified only in child support related matters, not spousal support related matters.

The Court, furthermore, finds the Opinion of Judge Bigham of the Adams County Court of Common Pleas in the case *Hoke-D'Amico v. D'Amico*, 73 Pa. D. & C. 4ᵗʰ 199 (Adams Cty. 2005) to be instructive in this matter, and it adopts the following language of the Opinion in whole:

> Alimony pendente lite provides a level playing ground for financially disadvantaged litigants who otherwise might be forced to settle or compromise their position because they financially are unable to litigate. Either party to a divorce proceeding is entitled to receive alimony pendente lite if there is a financial need. *Rueckert v. Rueckert*, 20 Pa. D. & C.3d 191 (Allegheny Cty. 1981). The net award is calculated solely based, "on the relative finances of the parties," without regard to fault. So long as there is a pending divorce, alimony pendente lite is a possible resource. *Id.*
>
> An unfortunate side-effect of an alimony pendente lite award is that sometimes the receiving party may lose its incentive to proceed with a divorce, especially if that party is receiving a substantial award. To allow a party to begin a divorce case and then allow that same party to effectively place it in neutral by refusing to file a necessary document, while continuing to collect a monthly check for alimony pendente lite, is unjust. The courts are not equipped with a remedy to order a party to proceed with a divorce. *Karchner v. Karchner*, 26 Pa. D. & C.3d 172 (Adams Cty. 1983). However, equity demands that the party either proceed with divorce and receive alimony pendente lite or refuse to go forward with the divorce and not receive alimony pendente lite.

The Court's reasoning that supports its suspension of Wife's APL obligation to Husband via the June 26, 2013 Order of Court follows the same logic described in the second quoted paragraph directly above. In the June 26, 2013 Motion brought by Wife, Wife averred that

Husband filed Exceptions on April 5, 2013 to the Master's Report and Recommendation, but had yet to file a Brief in Support of Exceptions or file a transcript. As recounted in the Procedural History Section of this Opinion, Wife further averred that she was severely prejudiced by the Exceptions continuing to be outstanding, as the Master's Report and Recommendation required her to continue paying APL to Husband pending the entry of a final Divorce Decree, and Wife could not obtain the Divorce Decree until Husband's Exceptions were disposed of by the Court.

The Court determined that Husband's inaction concerning his Exceptions "effectively placed the case in neutral" while he collected APL every month, and that the Court needed to encourage Husband to proceed with the divorce, which was close to final resolution pending the disposition of Husband's Exceptions. In light of these determinations and the Court's knowledge of Husband's bad faith behavior throughout the divorce and child custody litigation, the Court was correct in suspending Wife's APL obligation to Husband in the June 26, 2013 Order of Court.

**The Court did not err in determining the marital value of Wife's PNC ISP Account or the counsel fee award in the October 3, 2013 Order of Court.**
*(Matter Complained of on Appeal #5)*

Husband asserts in his Concise Statement that:

[Wife's] PNC ISP Retirement Account had a value of $143,222 on date of separation. [Wife] made a withdraw from her PNC ISP on September 16, 2010 for $15,500 (Plaintiff exhibit 30). [Wife] used $9,304 to voluntarily pay son's tuition, stating the loan was premarital. [Husband] took out a Parent PLUS loan, for son's tuition, on August 16, 2010 for $16,710…Master and Judge Walko removed [Husband's] Parent PLUS loan for son's college education in the amount of $16,710, as a voluntary debt. Master and Judge Walko included [Wife's] student loan payment of $9,304 and deduct it from Plaintiff's ISP, incorrectly reducing the value of PNC ISP to $133,918.

In crafting the October 3, 2013 Order of Court, the Court determined that Wife paid a marital debt using $9,304 of the funds withdrawn from her PNC ISP Account, but that Husband's Parent PLUS loan was not a marital debt. The reasons for this determination follow.

The Court first refers to p. 143 of the Hearing Transcript:

ATTORNEY SUHER: But have you taken out any loans against your ISP post-separation?

...

WIFE: Okay, there was a loan that I took out post-separation to pay the balance of my son's tuition and to also – it was for $15,000.

ATTORNEY SUHER: Okay, your son's tuition where?

WIFE: At Duquesne University.

ATTORNEY SUHER: And do you remember when you took out that loan?

WIFE: September 16th.

ATTORNEY SUHER: Of what year?

WIFE: 2010.

...

ATTORNEY SUHER: Okay, Chris, that debt that was incurred didn't accrue on September 16th; it accrued prior to obviously, correct?

WIFE: Yes.

ATTORNEY SUHER: I mean that's just when you paid the – where you took out the loan to pay the tuition, but it accrued prior to, correct.

WIFE: Yes.

THE COURT: Okay. And how much of it did you use on tuition?

WIFE: It was $9,204 on his tuition.

THE COURT: Okay. And the rest of it was?

WIFE: $2,500 went to my dad to purchase a furnace because his furnace wasn't working.

ATTORNEY SUHER: Okay, so the portion that was for your son was $9,204.30?

WIFE: YES.

THE COURT: Okay, now, I have a question about that. I'm interrupting you, but did you two agree before separation to finance college?

WIFE: *Yes, because it was an existing loan* [emphasis added]. So in July of 2010, I took out a payment arrangement with a company called Nelnet, and at that particular point in time Stephen's tuition was…well over $13,000. And so I paid a down payment through Nelnet…over $2,200, and I was to make monthly payments of around $1,300.

THE COURT: Okay. Well, all I want to get a handle on is it is a marital debt. There's no dispute about that.

ATTORNEY SUHER: Not from our position.

WIFE: Yes, it was taken out in July.

(H.T. 143 l. 15 to H.T. 146 l. 10)

Debts that accrue jointly before separation are marital debts. However, a debt accrued during this time may be a non-marital debt where the other spouse did not take part in incurring the debt and received no benefit therefrom. See *Harasym v. Harasym*, 614 A.2d 742 (1992). At

properly held that the Master did not abuse her discretion in determining that Wife did not use marital funds to pay her initial counsel fee.

Husband further takes issue with the award of $2,000 in counsel fees to Wife. Master Miller wrote the following in her Report and Recommendation:

> Several court orders defer wife's claim for counsel fees in connection with husband's conduct during the litigation (Exhibits 42, 44 and 45). Wife's fees totaled $19,709 and she seeks reimbursement in the amount of $2,627.89 for husband's conduct (Exhibit 48). It is clear that discovery difficulties and frivolous motions by husband have unnecessarily increased wife's counsel fees. That being so, the master recommends that husband pay $2,000 toward wife's counsel fees, said amount to be paid in full within sixty (60) days. (Master's Report, p.8)

The Court found that the Master did not err or abuse her discretion. As discussed throughout this Opinion, the Court is familiar with Husband's vexatious and dilatory behavior during this litigation. The Court, therefore, was correct in not disturbing Master Miller's reasonable counsel fee award.

Husband also argues in his Concise Statement that the Court erred by failing to address his Notice of Claim for counsel fees, which was filed April 22, 2013. The Court directs attention to the July 18, 2012 Scheduling Order. This Order schedules a hearing before a Master, who was to hear testimony and return a Report and Recommendation concerning *all pending issues*, which included Husband's claim for counsel fees and court costs. These claims, therefore, were properly heard at the February 12, 2013 hearing before Master Miller. If Husband disagreed with Master Miller's disposition of said claims, he should have included these issues in his Exceptions filed on April 5, 2013. In actions for divorce, matters not covered by exceptions are deemed waived unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters. Pa.R.C.P. 1920.55-2(b). Husband never requested leave to file Exceptions raising any

matters not covered by his April 5, 2013 Exceptions. The Court was correct in not granting Husband leave to file additional Exceptions.

**The Court did not err in entering Paragraphs (1) and (6) of the October 22, 2013 Order of Court.**
*(Matter Complained of on Appeal #6)*

Paragraph (1) of the October 22, 2013 Order of Court provides that, "[w]ithin ninety (90) days from the date of this Order, [Husband] shall refinance all debt associated with the marital residence located at 120 Monticello Drive, Monroeville, Pennsylvania 15146 into his name alone and to remove [Wife's] name from all said debt. Upon both having refinancing approved and closed, [Husband] shall provide evidencing documentation to counsel for [Wife]."

In his Concise Statement Husband states the following objection to the entry of Paragraph (1) of the October 22, 2013 Order of Court:

> The Court fails to favor [Husband] and minor child not being moved out of the marital residence which may mean that the family home will not be sold or refinanced until the youngest child is 18 years old, July 2016. Wife has purchased her own home (Plaintiff Exhibit 1) and a 2013 Kia Sportage. Mortgages on the marital residence have not prejudiced [Wife] in any way. There is no equity in the marital home and has no effect on Equitable Distribution. [Husband] has made payments since date of separation (Plaintiff Exhibits 5 & 6). [Husband] filed for and received exclusive possession of the marital residence and [Wife] never objected. [Wife] has signed a new deed and the marital residence is titled solely to [Husband]. [Husband] has installed new windows, garage door, sun porch, furnace, central air and water heater. If house were sold, it would be at a loss, since there is no equity…[Wife] has maliciously and willfully failed to make monthly mortgage payments (jointly titled) on the rental property which has seriously affected [Husband's] credit score and [Husband's] ability to refinance the marital residence.

Husband was awarded the marital residence in Equitable Distribution. As a result of this award, Husband is solely responsible for any encumbrances on the marital residence, and Wife appropriately requested that the Court enter an Order that required Husband to refinance the marital residence in order to remove Wife's name from any associated debt (namely, the first and

27

second mortgages on the property, both of which are titled jointly). The Court does not understand why Husband avers that refinancing the marital residence will force a sale of the same. Nor does the Court find that *only* having the marital residence titled solely in Husband's name to be a satisfactory release of Wife from an association with the marital residence. Wife would still be held responsible for payment and/or default on the property's mortgages without a refinance and removal of her name from the mortgage instruments. If Husband were to have issues refinancing the property because of his credit score, he can present a Motion to the Court on this issue. The Court, therefore, correctly entered the Order that required Husband to refinance the marital residence.

Paragraph (6) of the October 22, 2013 Order provides that: "Paragraph (3) of the October 3, 2013 Order of Court shall be clarified as follows: Defendant has paid a total of $10,828.00 toward marital debt, which includes the $3,360 in marital debt paid by Defendant as determined in Master Miller's report and recommendation."

Husband states the following in his Concise Statement:

> Order of Court dated October 3, 2013. Judge Walko awards Husband $7,401, taking into account Master's report. Order of Court dated October 22, 2013 Judge Walko checks [Husband] paid $10,828 toward marital debt. [Husband] believes the October 3, 2013 Order is correct and there is no justification if a change to the award is made or not made.

While the Court does not fully understand Husband's argument, it notes that Paragraph (6) was entered in error by the Court. The $10,828 that Husband paid toward marital debt was calculated by the Court, and it does not include the $3,360 in marital debt determined by Master Miller. Master Miller calculated the $3,360, as well as the $4,072 that she found Wife paid toward marital debt in her Report and Recommendation, using values in Husband's Pretrial Statement. There was no evidence on the record that supported Master Miller's calculations. The

Court, therefore, carefully studied the record, and it correctly determined that said record supported a finding that Husband paid $10,828 toward marital debt.

The Court, finally, notes that Husband discusses in his Concise Statement the trial court's determinations in several other Orders of Court that were not mentioned in nor attached to Husband's Notice of Appeal. The Pennsylvania Supreme Court has held that the Rule 1925(b) statement cannot be used to raise a claim for the first time on appeal. *In re B.C.*, 36 A.2d 601, 605 (Pa. Super. 2012). The Court, accordingly, does not address these other Orders of Court.

For the foregoing reasons, the June 23, 2011 Order of Court, July 18, 2012 Order of Court, February 6, 2013 Order of Court, June 26, 2013 Order of Court, October 3, 2013 Order of Court and October 22, 2013 Order of Court should be affirmed.

BY THE COURT:

_____, J.
Donald R. Walko, Jr., Judge

29